**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

HIRAM A. CELESTINE,

                Petitioner,

                v.

CHETIRKIN, et al.,

                Respondents.

Civil Action No. 22-4491 (KMW)

**OPINION**

**WILLIAMS**, District Judge:

This matter comes before the Court on Petitioner Hiram Celestine's petition for a writ of habeas corpus brought pursuant to 28 U.S.C. § 2254. (ECF Nos. 1-2.) Following an order to answer, Respondents filed an answer to the petition. (ECF No. 9.) In response, Petitioner filed motions seeking an evidentiary hearing, and a stay of this matter so that Petitioner can pursue unexhausted claims in state court. (ECF Nos. 13, 15.) Also before the Court is Respondents' motion to seal certain portions of the state record. (ECF No. 10.) For the following reasons, Petitioner's habeas petition will be denied, Petitioner will be denied a certificate of appealability, Petitioner's motions will be denied, and the motion to seal shall be granted.

I.     **BACKGROUND**

In the opinion affirming Petitioner's conviction and sentence, the Superior Court of New Jersey Appellate Division summarized the factual background of this matter as follows:

> [Petitioner was convicted of] for four counts of second-degree
> sexual assault[;] fourth-degree criminal sexual contact[;] second-

degree attempted sexual assault[;] second-degree sexual assault[;] fourth-degree resisting arrest[;] third-degree tampering with a witness[;] and the disorderly persons offense of harassment. . . .

. . . In the summer of 2010, [Petitioner] moved to Camden County to work at a packing company. [Petitioner] rented a room at a motel and worked six days per week. [Petitioner] met A.K. and her twin sister (the twin sister), who were fifteen-years-old and living at the motel with their mother and stepfather[. Petitioner] was thirty-four-years-old at the time.

A.K. testified she began a sexual relationship with [Petitioner] in August 2010. A.K.'s twin sister testified that the relationship began at the motel as well. [Petitioner] testified he was only friends with A.K. and the twin sister while living at the motel and that he did not start a sexual relationship with A.K. until after they both had moved out of the motel and she was sixteen-years-old.

In September 2010, [Petitioner] had a dispute with the motel management and was asked to leave. [Petitioner] was able to continue staying at the motel by paying a fee to his friend and staying in the friend's room. [Petitioner] testified that he would buy the twins' mother drugs when he bought his own, but that he promised A.K. he would not buy them for her mother anymore. A.K. testified the sexual relationship continued in the friend's room. A.K. testified that her twin sister knew about the relationship but that her parents did not.

In November 2010, A.K. and her family moved out of the motel and into a family member's house. [Petitioner] stayed in contact with A.K. and her family. [Petitioner] moved out of the area but testified he tried to visit A.K. every two weeks from July 2011 to July 2012. A.K. testified [Petitioner] started visiting her earlier, in November 2010, and they would have sex in a park and in a hotel.

In January 2011, [Petitioner] bought A.K. a phone for her sixteenth birthday and they met at a hotel. A.K. testified that she ended the relationship in the summer of 2012 because she found someone else. [Petitioner] testified that he was the one who ended the relationship because he could not afford to visit her anymore. The two continued to speak on the phone.

In August 2012, A.K. had an abortion and defendant accompanied her to the appointment. In September 2012, A.K. agreed to go to a hotel with [Petitioner] to see him "one last time." A.K. testified that [Petitioner] had told her that he would give her supplies and money for school. A.K. testified that [Petitioner] took

off his pants in the hotel room and she told him she did not want to have sex with him.  She testified that [Petitioner] became angry that he "wasted [his] money" on the hotel room.  A.K. testified he then forcibly raped her.  She testified that she tried to move her arms and kick him, she repeatedly asked him to stop, and she was crying.

A.K. took a shower because she "didn't want to smell like him" and went home and told the twin sister what happened.  The twin sister wanted to tell their mother but A.K. advised against that.  The twin siter and A.K.'s mother testified they saw bruises on A.K.'s legs.  A.K. testified that [Petitioner] continued to call her and "wanted to apologize and . . . make things right with what he did."  [Petitioner] testified that he never met A.K. in a hotel in September 2012.

On September 20, 2012, A.K. agreed to meet [Petitioner] at the Camden transportation center because she was afraid he knew her address and could harm her family.   A.K. testified that [Petitioner] became aggressive and she began to cry.  A nearby officer approached A.K. and [Petitioner] and noted A.K. was fearful and crying.  [Petitioner] told the officer A.K. was a family friend, she was pregnant, and he was trying to help her.  The officer decided to arrest [Petitioner], [Petitioner] ran from the officer, and the officer chased and subdued him with help from others.

Approximately five days after [Petitioner]'s arrest on September 20, 2012, [Petitioner] sent A.K. a postcard apologizing to her and asking her to "please drop the charges" or else he "will be here for a very long time."  [Petitioner] then sent A.K. another letter stating he was "truly sorry" and his actions were "unacceptable."

[Following his indictment in March 2013,] the [trial] court held a hearing on [Petitioner]'s motion to dismiss [the seven sexual assault and attempted sexual assault counts] of the indictment.  The court denied the motion [with prejudice] as to [all of those counts save the count related to the September 2012 rape]; [but] denied the motion [as to the September 2012 rape incident] without prejudice, instructing the State to provide defense counsel with "specifics concerning dates and times" [as to when the rape was said to have occurred.]  On July 21, 2014, the State amended [this contested count] from first-degree aggravated sexual assault "[o]n a date between August 1, 2012 and September 19, 2012," to second-degree sexual assault "on a date in September 2012 but before September 20, 2012."

> On July 22 to July 31, 2014, [Petitioner] was tried before a jury. On July 31, 2014, the jury found [Petitioner] guilty of the charges in the indictment, with the exception of a conviction on the lesser-included offense of harassment[.]
>
> The judge granted the State's motion to impose an extended sentence . . . based on [Petitioner]'s status as a persistent offender. On December 5, 2014, the court sentenced [Petitioner] to an aggregate of thirty-nine years' imprisonment, with twenty-five years' parole ineligibility pursuant to the No Early Release Act[.]

(ECF No. 9-30 at 1-6.)

## II.    **LEGAL STANDARD**

Under 28 U.S.C. § 2254(a), the district court "shall entertain an application for a writ of habeas corpus [o]n behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." A habeas petitioner has the burden of establishing his entitlement to relief for each claim presented in his petition based upon the record that was before the state court. *See Eley v. Erickson*, 712 F.3d 837, 846-47 (3d Cir. 2013). Under the statute, as amended by the Anti-Terrorism and Effective Death Penalty Act, 28 U.S.C. § 2244 ("AEDPA"), district courts are required to give great deference to the determinations of the state trial and appellate courts. *See Renico v. Lett*, 559 U.S. 766, 772-73 (2010).

Where a claim has been adjudicated on the merits by the state courts, the district court shall not grant an application for a writ of habeas corpus unless the state court adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2). Federal law is clearly established for these purposes where it is clearly expressed in "only the holdings, as opposed to the dicta[,]" of the opinions of the United States Supreme Court. *See Woods v. Donald*, 575 U.S. 312, 316 (2015). "When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Id.* Where a petitioner challenges an allegedly erroneous factual determination of the state courts, "a determination of a factual issue made by a State court shall be presumed to be correct [and the] applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## III.   DISCUSSION

### A.   Petitioner's indictment related claim

In his first claim, Petitioner argues that the trial court violated his right to Due Process when it refused to dismiss the count of his indictment related to the September 2012 incident based on the lack of a specific identified date on which the underlying events occurred. Specifically, he argues that the indictment was too imprecise even as amended as it still charged a crime as having occurred sometime during a twenty day period between September 1 and September 20 of 2012. The Appellate Division rejected this claim, noting that while state law requires an indictment which sets forth all of the essential elements which constitute the offense alleged, young victims are not required to be exact when specifying dates on which they were sexually abused. (ECF No. 9-30 at 8.) The Appellate Division noted that the amended indictment gave a specific period during which the events occurred, which was more than specific enough for Petitioner to present a defense indicating that he was working during all but two days of the period, and thus provided him an ample opportunity to prepare his claim that the events never occurred. (*Id.* at 9.) As Petitioner

was provided sufficient detail to prepare his defense and to identify the key elements of the charged crime, the Appellate Division found that the indictment was legally sufficient and the denial of Petitioner's motion to dismiss was not improper. (*Id.*)

The Fifth Amendment right to an indictment does not apply to state prosecutions, and has not been incorporated into the Fourth Amendment by the Supreme Court. *See Apprendi v. New Jersey*, 530 U.S. 466, 477 n. 3 (2000). A habeas challenge to an indictment must therefore generally fail as such challenges are not cognizable insomuch as the federal constitution does not mandate an indictment be acquired prior to a state court prosecution, and the sufficiency of a state court indictment is therefore an issue of state law. *See, e.g., Maldonado v. Att'y Gen. of New Jersey*, No. 19-7051, 2022 WL 671473, at *6 (D.N.J. Mar. 4, 2022). Even if the Fourteenth Amendment did incorporate the indictment requirement, however, the Supreme Court has identified only two constitutional requirements for an indictment: "First, [that it] contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, [that it] enables him to plead an acquittal or convictions in bar of future prosecutions for the same offense." *United States v. Resendiz-Ponce*, 549 U.S. 102, 108 (2007) (quoting *Hamling v. United States*, 418 U.S. 87, 119 (1974)). An indictment thus need contain "no greater [factual] specificity than the statutory language . . . so long as there is sufficient factual orientation to permit the defendant to prepare his defense." *United States v. Bergrin*, 650 F.3d 257, 264 (3d Cir. 2011).

Here, Petitioner's amended indictment was vague only as to one factor – the exact date on which the events occurred. Petitioner was, however, provided with a limited time frame of twenty days, a period which is more than sufficiently limited to provide Petitioner with enough factual orientation to prepare a defense to the crime charged – indeed, Petitioner was able to show that he was working during eighteen days of the period. As there was sufficient factual information in the

amended indictment to permit Petitioner to adequately prepare a defense, the fact that it did not contain an exact date and time would not render the indictment infirm even if that requirement did apply to the states. *Resendiz-Ponce*, 549 U.S. at 107-08 ("it was enough for the indictment in this case to point to the relevant criminal statute and alleged that '[o]n or about [a specific date]'" the defendant engaged in the specified illegal activity). As the indictment requirement does not apply to the states, and the state court's decision to deny the motion to dismiss in any event was well supported, Petitioner's challenge to the indictment provides no basis for habeas relief.

## B. Petitioner's cross-examination claim

Petitioner also contends that the state courts erred in preventing him from cross-examining the victim's mother as to his buying drugs for her, which Petitioner believes improperly limited his ability to impeach her credibility and otherwise challenge the testimony against him. The Appellate Division rejected this claim, finding that the trial court judge properly sustained an objection to this line of questioning as it was both beyond the scope of the direct examination and was otherwise not relevant. The Appellate Division further found that the limitation did not have a noticeable impact on Petitioner's defense regardless as Petitioner himself testified to his purchasing drugs for the victim's mother and provided his attorney with a basis to present the same challenge to the witness's credibility on that basis in his arguments.

Because "the Due Process Clause does not permit the federal courts to engage in a finely-tuned review of the wisdom of state evidentiary rules," *see Marshall v. Lonberger*, 459 U.S. 422, 438 (1983), a challenge to state court evidentiary rulings is normally considered a question of state law which is not cognizable in habeas corpus. *See Keller v. Larkins*, 251 F.3d 408, 416 n. 2 (3d Cir. 2001) ("A federal habeas court . . . cannot decide whether the evidence in question was properly allowed under the state law of evidence"); *see also Estelle v. McGuire*, 502 U.S. 62, 67-

70 (1991); *Wilson v. Vaughn*, 533 F.3d 208, 213-14 (3d Cir. 2008), *cert. denied*, 556 U.S. 1170 (2009). A habeas petitioner may only seek relief in his habeas petition for a state law evidentiary issue where he can show that the admission of the evidence in question denied his right to Due Process under the Fourteenth Amendment insomuch as the evidence deprived him of the "fundamental elements of fairness in [his] criminal trial." *Glenn v. Wynder*, 743 F.3d 402, 407 (3d Cir. 2014) (quoting *Riggins v. Nevada*, 504 U.S. 127, 149 (1992) (Thomas, J. dissenting)). "The Supreme Court has 'defined the category of infractions that violate 'fundamental fairness' very narrowly, based on the recognition that, beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation.'" *Id.* (quoting *Medina v. California*, 505 U.S. 437, 443 (1992)). "In order to satisfy due process, [Petitioner's] trial must have been fair, it need not have been perfect." *Id.* (citing *United States v. Hasting*, 461 U.S. 499, 508 (1983)). Thus, a Due Process violation will only occur in the context of a state court evidentiary ruling when that ruling was "so arbitrary or prejudicial that it rendered the trial fundamentally unfair." *Scott v. Bartkowski*, No. 11-3365, 2013 WL 4537651, at *9 (D.N.J. Aug. 27, 2013) (citing *Romano v. Oklahoma*, 512 U.S. 1, 12-13 (1994)).

Here, the evidence Petitioner was prevented from eliciting was of limited value, and was still ultimately placed into evidence by Petitioner's own testimony. The trial judge's finding that the testimony regarding Petitioner's purchasing of drugs for the victim's mother was both irrelevant beyond the scope of direct examination is supported by the record, and was in any event neither arbitrary nor prejudicial in light of the fact that Petitioner was still able to provide testimony to that effect himself, permitting his counsel the grounds to argue that the testimony of the victim and her family was colored by the mother's drug use and Petitioner's part in that. Petitioner was thus not prejudiced by the limits on testimony.

Moving beyond the Due Process implications of Petitioner's claim, Petitioner also contends that this limitation impugned his rights under the Confrontation Clause. The Sixth Amendment guarantees a criminal defendant the right "to be confronted with the witnesses against him," which "includes the right to conduct reasonable cross-examination." *Wright v. Vaughn*, 473 F.3d 85, 93-94 (3d Cir. 2006) (internal quotations omitted). A criminal defendant can therefore state a violation of his rights under the Confrontation Clause "by showing that he was prohibited from engaging in otherwise appropriate cross-examination" which would "expose the jury [to facts] from which jurors . . . could appropriately draw inferences relating to the reliability of the witness." *Olden v. Kentucky*, 488 U.S. 227, 231 (1988) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680 (1986)). The Confrontation Clause is not unlimited in scope – cross-examination is still subject to the discretion of trial judges to curtail improper questioning and to limit repetitive and otherwise irrelevant testimony on cross-examination. *Wright*, 473 F.3d at 93. Allegations that a trial court's rulings curtailing a Petitioner's cross-examination of a witness violate the Confrontation Clause, however, are subject to harmless error analysis. *Id.* (citing *Van Arsdall*, 475 U.S. at 684). When raised on collateral review, errors of even a constitutional dimension will be considered harmless and thus will not warrant habeas relief "unless [the alleged constitutional error] had a substantial and injurious effect or influence in determining the jury's verdict." *Fry v. Piller*, 551 U.S. 112, 116 (2007); *see also Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993).

The first hurdle which Petitioner fails to clear in his Confrontation Clause claim is that the testimony he sought to elicit was otherwise appropriate – as noted, the state courts reasonably found the testimony in question to be beyond the scope of direct examination and therefore improper, as well as irrelevant to the issues at hand at trial. Putting aside the fact that the cross-examination in question was beyond the proper scope under state law evidentiary rules, the curtailing of Petitioner's ability to question the victim's mother on her drug use was ultimately

harmless – Petitioner provided testimony to the same effect himself, providing all the ammunition counsel needed to present whatever arguments he felt would flow from the testimony he sought from the victim's mother. Ultimately, the limitations on cross-examination of the victim's mother did not have a substantial and injurious effect upon the outcome of Petitioner's trial as it is not likely that the outcome of trial would have differed had counsel been permitted to pursue the line of questioning, and the alleged Confrontation Clause error is thus harmless and provides no basis for habeas relief.

### C. Petitioner's flight charge claim

Petitioner next argues that the trial court erred in providing a flight charge which he believes was not properly tailored. Specifically, Petitioner contends that the flight charge given at trial, which was only applicable to the terroristic threats charge, was not sufficiently limited in scope and did not sufficiently inform the jury of the limited applicability of the flight issue to the terroristic threats charge. The Appellate Division rejected this claim both because it was defense counsel who requested the flight charge, and the trial judge had explicitly referenced flight only in relation to the terroristic threats charge, told the jury they should reach the issue only if the jury found Petitioner guilty of terroristic threats and resisting arrest, and left the determination of whether Petitioner's actions constituted flight solely to the jury's judgment of the facts.

That a jury "instruction was allegedly incorrect under state law is not a basis for habeas relief." *Duncan v. Morton*, 256 F.3d 189, 203 (3d Cir.) (quoting *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991)), *cert. denied*, 534 U.S. 919 (2001). A habeas petitioner can thus receive relief based on an allegation of improper jury instructions at trial only where "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977). The Supreme Court has held that the "category of infractions that violate fundamental fairness" is very narrow, *Estelle*, 502 U.S. at 72-73, and the challenged

jury instruction must be considered in the context of the entire charge and the trial as a whole, with habeas relief available only where the charge was so erroneous that it resulted in a violation of Due Process in light of all the relevant facts. *Duncan*, 256 F.3d at 203. Even where the instruction in question was "undesirable, erroneous, or even universally condemned," habeas relief will not be warranted solely on that basis. *Id.*

The flight charge provided to the jury was but one small part of a lengthy and detailed jury charge. The trial judge appropriately framed and limited the flight charge to the counts to which it was relevant – terroristic threats and resisting arrest – and made it clear that it was the jury alone who could determine if what Petitioner did constituted flight and whether that was indicative of guilt on the relevant terroristic threats count. The flight charge did not have the capability to render Petitioner's entire trial fundamentally unfair, and it is not likely the outcome of Petitioner's trial would have differed had the charge, requested by Petitioner's own attorney, had not been given. Petitioner's flight charge claim thus provides no basis for habeas relief.

### D. Petitioner's Sentencing claims

In his next series of claims, Petitioner contends that his sentencing was improper both because the court considered a presentence report which contained information beyond that which was established at trial including police reports and witness statements, and that the trial court improperly imposed consecutive sentences and parole disqualifiers upon him in violation of state law. The Appellate Division rejected both claims. As to the presentence report, the Appellate Division noticed that consideration of the written report was actually a *requirement* of state law, including that it be based on an individualized evaluation of various records related to the Defendant. The Appellate Division in turn rejected Petitioner's challenge to his consecutive sentences and parole disqualifiers as his sentence was well within the proscribed statutory range,

the sentencing judge carefully considered the appropriate factors under state law, and issued an appropriate sentence.

Because federal habeas jurisdiction is only available to remedy violations of the United States Constitution or federal law, habeas relief is ordinarily not available for alleged errors of state law. *See Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991); *Lewis v. Jeffers*, 490 U.S. 764, 780 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984); *Riley v. Taylor*, 277 F.3d 261, 310 n. 8 (3d Cir. 2001). A federal habeas court therefore has no authority to re-examine state court determinations on issues of state law. *See Estelle*; 502 U.S. at 67-69. Because "sentencing is a matter of state criminal procedure and [generally] does not involve such a denial of fundamental fairness as to fall within the purview of federal habeas corpus," alleged sentencing error by a state court will not warrant habeas relief unless the sentence imposed was outside of the range authorized by the crime in question or was otherwise beyond the sentencing judge's authority to give. *See, e.g., Sutton v. Blackwell*, 327 F. Supp. 2d 477, 486 (D.N.J. 2004) (quoting *Grecco v. O'Lone*, 661 F. Supp. 408, 415 (D.N.J. 1987).

Turning first to Petitioner's claim related to the consideration of the presentence report, the Appellate Division clearly affirmed that consideration of such a report is not only appropriate during sentencing, but is, in fact, required by state law, and was not an error of state law. Petitioner does not explicitly provide any federal law to the contrary, but appears to believe this state rule mistaken because the sentencing judge considers things not presented to the jury. Under federal law, however, the only sentencing issues which *must* be presented to a jury before they can be considered are the elements of an offense, including any sentencing factor which increases a statutory mandatory minimum or maximum sentence, a sentencing judge is otherwise free to consider and determine facts which do not affect the statutory sentencing range applicable to a given conviction. *See, e.g., Apprendi v. New Jersey*, 530 U.S. 466, 483 (2000); *see also Alleyne*

*v. United States*, 570 U.S. 99, 105-17 (2013). The decision to consider the presentence report and the underlying information contained therein, which was not used to raise or alter Plaintiff's mandatory minimum or maximum sentence, was thus neither contrary to nor an unreasonable application of federal law.

Plaintiff's consecutive sentencing claim fairs no better. In it, Plaintiff contends that the state court's erred in applying state laws including the state court decision governing the imposition of consecutive sentences and state statutory sentencing aggravating and mitigating factors. The Appellate Division found, however, Petitioner's sentence entirely proper and not excessive under state law. This Court has no authority to second guess the state courts' application of state law as to which sentences should be made to run consecutively, nor which should be subject to parole ineligibility terms. As Petitioner's sentences were within the maximums set by the state sentencing regime, and because Petitioner has failed to show that his sentence was otherwise improper under federal law, Petitioner has failed to show any valid basis for habeas relief as to his sentences.

### E. Petitioner's sufficiency of the evidence claims

In his next claim, Petitioner asserts that the state courts erred in refusing to grant his motion for acquittal on the September 2012 related count of the indictment as he believes the evidence against him was insufficient insomuch as the victim did not provide a specific date or time on which the event occurred, and because she did not corroborate her claims. When a habeas petitioner presents a claim challenging the sufficiency of the evidence provided at trial, "a reviewing court must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Eley*, 712 F.3d at 847 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319

(1979)). A court sitting in habeas review may therefore overturn a conviction based on insufficient evidence only "if it is found that upon the record evidence adduced at trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* (quoting *Jackson*, 443 U.S. at 324). Under this "deferential federal standard," juries have "broad discretion in deciding what inferences to draw from the evidence presented at trial" and federal courts must not "unduly impinge[] on the jury's role as factfinder" by engaging in "fine-grained factual parsing." *Coleman v. Johnson*, 566 U.S. 650, 655 (2012). At trial, A.K. testified that Petitioner forcibly sexually assaulted her during a meeting at a hotel at some time between September 1 and 20 of 2012. Family members likewise testified to bruising on her person after this event. This testimony, viewed in the light most favorable to the prosecution, is more than sufficient to permit a rational juror who found A.K. credible to infer that Petitioner engaged in the charged conduct, and Petitioner's sufficiency of the evidence challenge to this charge is thus entirely without merit.

Petitioner also challenges the sufficiency of the evidence as to the witness tampering charge. Under the applicable statute, a defendant commits the crime of witness tampering when the person "believing that an official proceeding or investigation is pending or about to be instituted or has been instituted, . . . knowingly engages in conduct which a reasonable person would believe would cause a witness or informant to . . . [t]estify or inform falsely; . . . [w]ithhold any testimony, information, document, or thing; . . . [e]lude legal process summoning him to testify or supply evidence; . . . . [a]bsent himself from any proceeding or investigation[;] or . . . [o]therwise obstruct, delay, prevent or impede an official proceeding or investigation." N.J. Stat. Ann. § 2C:28-5(a). Petitioner asserts that the State failed to prove that he knew that there was an investigation into him when he sent the letters seeking to have A.K. drop the charges against him. The evidence at trial, however, indicates that Petitioner specifically sent postcards and letters to A.K. in an attempt to get her to drop the charges against him so that he would not remain in jail

for a "long time." Those letters in and of themselves indicate that Plaintiff was in custody, knew that he was facing serious criminal charges, and that those charges stemmed from wrongs he had done to A.K. A reasonable juror clearly could have concluded from this information that Plaintiff either believed that there was an investigation into his misdeeds or at the very least knew that an investigation or proceeding against him was "about to be instituted," and then knowingly chose to engage in a letter campaign to get the chief witness against him – his victim – to make efforts to prevent that investigation from proceeding to criminal charges. Clearly, a reasonable juror could have found Petitioner guilty, he therefore has failed to show that the evidence against him was insufficient. Thus, Petitioner has not shown a basis for habeas relief by his attack on the sufficiency of the evidence as to the witness tampering charge.

### F.   Ineffective Assistance of Counsel

In his remaining claims, Petitioner asserts that he suffered from ineffective assistance of counsel.[1]

The standard applicable to claims of ineffective assistance of counsel is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington,* 466 U.S. 668 (1984). To make out such a claim under *Strickland,* a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick,* 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland,* 466 U.S. at 687; *Shedrick,* 493 F.3d at 299.

---

[1] Respondents assert that certain portions of Petitioner's ineffective assistance of counsel claims were not properly and fully exhausted in state courts. To the extent that any claim discussed in this opinion was not properly exhausted, this Court denies Petitioner's claims on the merits notwithstanding exhaustion. *See* 28 U.S.C. § 2254(b).

> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

In his chief ineffective assistance claim, Petitioner contends that his trial counsel proved deficient in failing to call a number of witnesses at trial – a motel manager and two former work supervisors who Plaintiff believes could have testified he was not present when A.K. said that he assaulted her, and an investigator who worked on his defense. During his PCR proceedings, the

state courts rejected Petitioner's claims regarding the motel manager and former supervisors[2] as Plaintiff failed to provide any certification or sworn statement from either regarding what testimony they could have offered. Turning to the investigator, the Appellate Division found that while Petitioner offered a certification in which the investigator stated that, while investigating Petitioner's case, she had sought and acquired motel records which would support the Petitioner's contention that he was elsewhere during the September 2012 time period during which the rape incident occurred, the investigator admitted that she was no longer in possession of those records and did not know how they could now be located. The Appellate Division further noted that this purported testimony was directly contradicted by the trial testimony of a Camden County Prosecutor's Office Detective who had testified that she was unable to acquire *any* records from the motel in question. The Appellate Division therefore found that Petitioner failed to show he was prejudiced by the failure to call the defense investigator as he could not show that her testimony would have been of any value at trial without copies of the motel records she allegedly discovered.

Because the decision as to which witnesses should be called at trial rests firmly in counsel's hands, where a petitioner challenges his counsel's decision as to which witnesses to call, courts "are 'required not simply to give [the] attorney[] the benefit of the doubt, but to affirmatively entertain the range of possible reasons [petitioner's] counsel may have had for proceeding as he did.'" *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014). "*Strickland* requires that a defendant 'overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.' 466 U.S. at 689 (internal quotation marks omitted). If the

---

[2] It appears that Petitioner only raised one of the two supervisors before the Appellate Division, though the state trial court rejected both work-related witnesses for failure to provide a proper affidavit. (*See* ECF No. 9-84 at 11.)

Government 'can show that counsel actually pursued an *informed* strategy (one decided upon after a thorough investigation of the relevant law and facts),' the effectiveness of counsel's assistance is 'virtually unchallengable.' *Thomas v. Varner*, 428 F.3d 491, 500 (3d Cir. 2005)." *United States v. Graves*, 613 F. App'x 157, 159 (3d Cir. 2015). Likewise, in order to show that he was prejudiced by counsel's failure to call any particular witness, a petitioner must present a sworn statement setting forth that witness's proposed testimony as the "failure to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making a *prima facie* showing of prejudice." *Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).

Here, Petitioner asserts counsel failed to call as witnesses a motel manager and two work supervisors, one of which Petitioner states counsel also lied about subjecting to a subpoena. Petitioner failed in the state courts to provide any affidavit as to these three witnesses, and fails once again in this Court to provide any sworn affidavit or certification from any of these three witnesses. As such, Petitioner cannot show and has not shown that he was prejudiced by the failure of counsel to subpoena or call any of these witnesses during his trial. *Duncan*, 256 F.3d at 201-02. Petitioner's ineffective assistance claims related to these witnesses must therefore fail as a matter of law.

Petitioner has also failed to show he was prejudiced by the failure of counsel to call the defense investigator as a witness. Essentially, Petitioner wished to have this investigator called as she stated in her affidavit that she discovered motel records which would show that Petitioner was staying elsewhere during the September 2012 period during which the rape incident took place. Although the investigator stated that she had seen these records back before trial, she admitted that she no longer has these records, and does not know where they can be located. At best, then, she could provide only a claim that records exist which are no longer available. That statement is

directly contradicted by testimony in the record from state investigators who testified at trial that no such records could be found.  Without the records themselves, the investigator's testimony is of little value and provides little more than a contradiction of the statement by the state's detective. It is the alleged records themselves that might have some value, and without copies of them to review, one can hardly say that there is any likelihood that the outcome at trial would have been affected.  In the absence of any copies of the alleged lost motel records, and direct testimony in the record that no such records existed or were available, this Court cannot find that the investigators testimony that she had previously found, but ultimately lost track of, motel records would have been likely to have any effect on the outcome at trial.  Petitioner thus fails to show that he was prejudiced by the failure to call the defense investigator at trial,[3] and has failed to show that the state courts' rejection of this claim and refusal to hold an evidentiary hearing as to this claim amounted to an unreasonable application of *Strickland* and its progeny.  Petitioner's witness related ineffective assistance of counsel claims thus provide no basis for habeas relief.

Petitioner also asserts that his trial counsel proved ineffective in failing to make a renewed motion to dismiss the September 2012 rape related counts of the indictment for lack of a specific date, and failed to make a motion for acquittal at trial.  As recounted above, the state courts found

---

[3] Petitioner also asserts that the failure to call the investigator at trial amounts to a per se showing that his trial counsel failed to properly investigate his case.  This claim fails for the same reason – to prove ineffective assistance related to an investigation, Petitioner would have to show that further investigation would have revealed evidence likely to affect the outcome at trial. *See, e.g., Brown v. United States*, No. 13-2552, 2016 WL 1732377, at *4-5 (D.N.J. May 2, 2016).  Without providing actual copies of the alleged motel records sufficient to show that the records, if discovered by counsel, could have affected the outcome at trial sufficient to show ineffective assistance.  The investigator's proposed testimony – that she found records that detectives could not and then lost track of them and could no longer produce them – fails to establish that records of Petitioner's purported innocence sufficient to have an effect on the outcome at trial actually existed and could have been discovered.  Thus, regardless of whether couched as failure to investigate the records by counsel, or failure to call the investigator at trial, Petitioner has failed to show prejudice and thus failed to show ineffective assistance of counsel.

the amended indictment more than sufficient to survive a motion to dismiss, and any motion for an acquittal would have failed as the evidence presented at trial was more than sufficient to permit a reasonable juror to find Petitioner guilty on the challenged counts, and Petitioner has utterly failed to show that the evidence against him was insufficient as to any of the other counts of which he was found guilty. As counsel cannot be ineffective in failing to make a meritless motion, *see Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000), and Petitioner has failed to show either of the motions he wished had been filed had any merit, he has failed to show that trial counsel was ineffective in failing to file the desired motions. Petitioner's motion related ineffective assistance claims are thus without merit and are denied.

In his last several claims, Petitioner contends that he received ineffective assistance of PCR counsel. The ineffectiveness of counsel in state collateral proceedings, however, is not a proper basis for habeas relief. *See* 28 U.S.C. § 2254(i) (the "ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief" in a habeas proceeding). To the extent Petitioner sought relief based on these claims,[4] they must therefore be denied.

Because all of Petitioner's claims shall be denied, Petitioner's habeas petition is denied in its entirety. Likewise, because all of Petitioner's claims are without merit, his motion seeking an evidentiary hearing (ECF No. 13) must also be denied. Finally, Petitioner's recent motion seeking a stay (ECF No. 15) must also be denied because any unexhausted claims contained in his current habeas petition are without merit and therefore cannot serve as the basis for a stay, *see Rhines v.*

---

[4] Petitioner suggests that he is raising these claims, at least in part, to serve as a gateway for his claims which would otherwise be defaulted. Because this Court rejects all of Petitioner's claims on the merits, and does not rely on Petitioner's apparent defaults in denying his claims, this Court need not and does not determine whether ineffectiveness of PCR counsel would serve as a gateway in this matter.

*Weber*, 544 U.S. 269, 274-78 (2005), and Petitioner has failed to amend his petition to assert any new, unexhausted claims which he is seeking to exhaust and raise in this court. Finally, because the record contains numerous references to the identity of victims of sexual assault which were sealed at the state court level and Respondents have shown good cause, Respondents' motion to seal the state court record (ECF No. 10) is granted.


## IV.   **CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253(c), a petitioner may not appeal from a final order in a habeas proceeding where that petitioner's detention arises out of his state court conviction unless he has "made a substantial showing of the denial of a constitutional right." "[A petitioner] satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude [that] the issues presented here are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Because Petitioner's habeas claims are without merit for the reasons set forth above, he has failed to make a substantial showing of a denial of a constitutional right, and his petition is not adequate to receive encouragement to proceed further. This Court therefore denies Petitioner a certificate of appealability.

## V.   <u>CONCLUSION</u>

In conclusion, Petitioner's habeas petition (ECF Nos. 1-2) is **DENIED**, Petitioner is **DENIED** a certificate of appealability, Petitioner's motions for a hearing (ECF No. 13) and a stay (ECF No. 15) are **DENIED**, and Respondents' motion to seal the state court record (ECF No. 10) is **GRANTED**.  An order consistent with this opinion shall be entered.

Hon. Karen M. Williams,
United States District Judge